618 A.2d 438

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Chazwick NEAL.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1992.

Filed Dec. 24, 1992.

George S. Leone, Asst. Dist. Atty., Philadelphia, for Com., appellant.

David Rudovsky, Philadelphia, for appellee.

Before WIEAND, KELLY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the February 20, 1991 order granting a new trial due to the ineffectiveness of trial counsel.[1] On appeal, the Commonwealth asks us to determine the following:

I. Did the trial court improperly admit the alleged "expert" testimony of an attorney purporting to be an "expert" on ineffectiveness of counsel, improperly permit the "expert" to proclaim his opinion on the ultimate legal issue, and improperly allow defendant to avoid his burden of proving ineffectiveness by improper reliance on this "expert" opinion?

II. Did the trial court err in not rejecting defendant's meritless claims of ineffectiveness?

Commonwealth Brief at 3. For the following reasons, we affirm.

On May 8, 1990, a jury found appellee, Chazwick Neal, guilty of involuntary deviate sexual intercourse[2] and corruption of minors.[3] Trial counsel filed post-verdict motions. Subsequently, appellee retained new counsel who filed an amended motion for a new trial asserting the ineffective assistance of his trial counsel.

[1]. The trial judge retired from the bench before filing a Pa.R.A.P. 1925(a) opinion.

[2]. 18 Pa.C.S.A. § 3123.

[3]. 18 Pa.C.S.A. § 6301.

During a hearing on the issue of trial counsel's ineffectiveness, appellee's new counsel presented as a witness, attorney Louis Natali [hereinafter "Natali"]. Natali, who was offered as an expert on the issue of ineffective assistance of counsel, testified that trial counsel was ineffective for a number of reasons. Following the hearing, the court determined that trial counsel had indeed rendered ineffective assistance and, accordingly, granted appellee a new trial. This timely appeal followed.

▮ The Commonwealth first asserts that it was error for the trial court to allow an attorney to testify as an expert on the issue of trial counsel's ineffectiveness. Specifically, the Commonwealth argues that as "a trial court is not a layman requiring expert advice [, but] is fully and indeed uniquely competent to make the legal determination of whether the trial counsel's conduct met the constitutional effectiveness standard," by allowing the expert testimony, the court abdicated its role to determine the ultimate issue. Commonwealth Brief at 10. We find that the admission of the testimony was improper.[4]

**4.** The decision to admit or exclude expert testimony lies within the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of discretion. *Commonwealth v. Johnson*, 399 Pa.Super. 266, 270, 582 A.2d 336, 337 (1990), *allocatur granted*, 529 Pa. 617, 600 A.2d 534 (1991); *Commonwealth v. Emge*, 381 Pa.Super. 139, 141, 553 A.2d 74, 74 (1988). However, "expert testimony is admitted only when the subject matter is beyond the knowledge or experience of the average layman. When the issue is one of common knowledge, expert testimony is inadmissible." *Commonwealth v. Dunkle*, 529 Pa. 168, 181, 602 A.2d 830, 836 (1992) (quoting *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976)).

During the hearing on appellee's motion for a new trial, appellee's new counsel offered attorney Natali as an expert on the issue of ineffective assistance of counsel. The assistant district attorney objected to this testimony arguing that it invaded the province of the court in determining whether trial counsel was effective. Thus, the testimony usurped the court's discretion to decide the issue based on the facts and the record. The trial court nevertheless allowed the testimony, reasoning that it might be helpful to the court. In so doing, the court noted that it would not be controlled by the opinion of the expert witness.

We note that neither this court nor our Supreme Court has specifically addressed this issue. We recognize that the Supreme Court stated that "[s]hould it prove helpful, however, to a trial judge to hear such testimony, he may, but is not obliged." *Commonwealth v. Peterkin*, 511

■ Nevertheless, we find that the trial court was not prejudiced by the introduction of the expert testimony. The judge stated that "I am certainly not going to be controlled by another lawyer's opinion. I hope I can stand back and consider all of the testimony for what it is worth." N.T. December 11, 1991, at 32. In addition, the expert did little more than present assertions that could have been framed in questions to trial counsel. Furthermore, upon conducting our own review of trial counsel's effectiveness, we conclude that, absent the expert testimony, the record compels the trial court's result.

■ We now turn to appellee's claims of ineffective assistance of trial counsel. Preliminarily, we note that although counsel is presumed to be effective, *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 974 (1987), that presumption is rebuttable. To prevail on an ineffectiveness claim, an appellant must show that his underlying contention possesses arguable merit, that the course chosen by counsel had no reasonable basis designed to serve his interests, and that counsel's conduct prejudiced him. *Commonwealth v. McBee,* 513 Pa. 255, 261, 520 A.2d 10, 13 (1986).

Appellee raised eight claims of ineffectiveness.[5] As we agree with his contention that trial counsel was ineffective in

Pa. 299, 513 A.2d 373 (1986). However, that statement was *dicta* as the court held that it was not error for a trial court to disallow such testimony. The court reasoned that a trial judge who was immersed in the case is in the best position to determine what a reasonably vigorous advocate would do in a case. *Id.* at 324–25, 513 A.2d at 386. We agree.

**5.** The specific allegations of ineffectiveness included: (1) trial counsel's failure to object to expert testimony of a doctor regarding why complainant may have delayed reporting the incident; (2) trial counsel's failure to object to the competency *voir dire* of the complainant in the presence of the jury; (3) trial counsel's failure to call appellee as a witness without first consulting appellee; (4) trial counsel's failure to object to a jury charge regarding character evidence; (5) trial counsel's failure to effectively present character testimony; and (6) trial counsel's failure to rebut the Commonwealth's argument that appellee changed his appearance prior to a line-up to avoid identification. *See* Appellee's Brief at 2–3.

failing to call appellee to testify at trial, we need only address that claim.

■ "The decision whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel." *Commonwealth v. Bazabe,* 404 Pa.Super. 408, 590 A.2d 1298, 1301 (1991) (citations omitted).

> In order to support a claim that counsel was ineffective for 'failing to call the appellant to the stand', [appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

*Id.* (citations omitted.)

Appellee testified that during the period of investigation and preparation for trial and during the trial, trial counsel never discussed with appellee his right to testify. N.T. 12/11/91 at 5. He also stated that he had never been arrested before nor had he ever been through a criminal proceeding. *Id.* at 5–6. In addition, appellee indicated that he would have chosen to testify, had he been informed of his right. *Id.* at 7. In response, trial counsel merely stated that although he did not specifically remember discussing with appellee the right to testify, it was his usual practice to speak to his clients about that right. N.T. 1/17/91 at 5–6. Trial counsel further conceded that it was possible that he never consulted with appellee on the matter. *Id.* at 10.[6]

The record before us indicates that appellee's decision to forego testifying on his own behalf was not an informed decision reached "after full consultation with counsel." By not informing his client of his right to testify, counsel interfered

6. The instant case is readily distinguishable from cases in which it has been shown that counsel consulted with his client regarding his right to take the stand. *See, e.g., Commonwealth v. Wallace,* 347 Pa.Super. 248, 255, 500 A.2d 816, 819 (1985) (trial counsel not ineffective where notes of testimony indicate that discussion took place during trial in which defendant told court that he was satisfied with his lawyer's advice not to take witness stand); *Commonwealth v. Mancini,* 340 Pa.Super. 592, 610, 490 A.2d 1377, 1386 (1985) (counsel not ineffective where counsel discussed implications of taking the stand and defendant opted not to testify).

with that right. Thus, appellee's claim possesses arguable merit.

We next consider the second prong of the test, whether counsel presented a reasonable strategic basis for his actions. Counsel offered no reason why he would have suggested that appellee not take the stand. Moreover, in light of appellee's testimony that he has no past criminal record that would be brought out during cross-examination, we perceive no apparent reason for such a choice. Counsel has not pointed to any strategy having a reasonable basis designed to serve his client's interests. Therefore, the second prong has not been met.

Finally, we turn to the last prong of the test, whether counsel's conduct prejudiced appellee. It is now well-settled that a defendant in a criminal case has a constitutionally-based right to take the witness stand and to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). As noted by the United States Supreme Court, "the most important witness for the defense in many criminal cases is the defendant himself." *Id.* at 52, 107 S.Ct. at 2709. "Even more fundamental to a personal defense than the right of self-representation ... is an accused's right to present his own version of events in his own words." *Id.*

This right is of utmost importance where, as here, the outcome of the case turned primarily on the credibility of the victim. The Commonwealth contends that in appellee's amended motion for a new trial, there is no suggestion as to what testimony, if any, appellee would have offered. We disagree. First, while being questioned by the Commonwealth during the hearing following post trial motions, appellee testified that he had never seen the complainant before and had had no contact with him. N.T. 12/11/90 at 12. Second, appellee indicated that he would have offered testimony to rebut incriminating testimony of the complainant regarding appellee's shaving prior to his appearance in a lineup.[7]

7. Appellee presented the following testimony during the hearing on his post-trial motions. Following his arrest, appellee requested and the court granted a line-up. At the initial date for the line-up, appellee

*Id.* at 9–10. Appellee was deprived of the opportunity to deny the charges directly and the jury was denied essential defense testimony that would have negated a key part of the Commonwealth's case. As a result, we find that appellee was indeed prejudiced by trial counsel's actions.

For the foregoing reasons, we affirm the order granting appellee a new trial.

Affirmed.

<hr />

went to the Detention Center to select "fillers" from the prison population. He found nobody with the kind of facial hair that he had. Because the complainant did not appear, the line-up was continued. Appellee shaved his beard so that he could select fillers who did not look dissimilar. He did not attempt to unfairly change his appearance to avoid identification, since he had been ready to appear with a beard at the first line-up. N.T. 12/11/90, at 8–10. During trial, the Commonwealth argued that appellee's change of appearance was evidence of his guilt.