[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 439 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 440 
On August 27, 1986, the appellant, James Edmond McWillliams, was convicted of two counts of capital murder because he committed the murder during the course of a robbery, see
§ 13A-5-40(a)(2), Ala. Code 1975, and one count of capital murder because he committed the murder during the course of a rape,see § 13A-5-40(a)(3), Ala. Code 1975. On August 28, 1986, by a vote of 10-2, the jury recommended that he be sentenced to death. On October 9, 1986, the trial court accepted the jury's recommendation and sentenced him to death. We affirmed his convictions on direct appeal, see McWilliams v. State,640 So.2d 982 (Ala.Crim.App. 1991); the Alabama Supreme Court affirmed his convictions, see Ex parte McWilliams,640 So.2d 1015 (Ala. 1993), and his sentence, see Ex parte McWilliams,666 So.2d 90 (Ala. 1995); and the United States Supreme Court denied his petition for certiorari review, see McWilliams v.Alabama, 516 U.S. 1053, 116 S.Ct. 723, 133 L.Ed.2d 675 (1996). The relevant facts of the case are set forth in this court's opinion on direct appeal. This court issued a certificate of judgment on August 8, 1995.
On April 2, 1997, the appellant filed a Rule 32 petition, challenging his convictions. After several attorneys were appointed and allowed to withdraw, the appellant filed an amended Rule 32 petition on September 29, 1999. He filed a second amended petition on June 8, 2000, and a revised second amended petition on June 12, 2000. The circuit court conducted an evidentiary hearing on June 12-15, 2000. On August 8, 2000, the appellant moved to amend his Rule 32 petition, to examine additional witnesses, and to have a one day evidentiary hearing so he could call those witnesses. After the State objected, the circuit court denied the appellant's motion. In March 2001, the appellant again moved to amend the Rule 32 petition and to conduct additional discovery. The circuit court denied that motion. In September 2001, the circuit court issued a 43-page order denying the appellant's petition. This appeal followed.
The appellant raises several arguments, including claims that his attorneys rendered ineffective assistance during various proceedings. In reviewing the circuit court's rulings on the appellant's arguments, we apply the following principles:
 "`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129
(Ala.Cr.App. 1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App. 1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
 "In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995). *Page 441 
 "To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. . . . "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
 "Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
 "When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534
(Ala.Cr.App. 1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App. 1991)."
Hallford v. State, 629 So.2d 6, 8-9 (Ala.Crim.App. 1992).
 "In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to dispose of an ineffectiveness claim on *Page 442 
the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala.Crim.App. 1987) (footnote omitted).
 "Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir. 1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App. 1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala.Crim.App. 1998).
 I.
First, the appellant argues that the circuit court improperly adopted verbatim the State's proposed orders.
 "`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990).'
 "Wright v. State, 593 So.2d 111, 117-18
(Ala.Cr.App. 1991), cert. denied, [506] U.S. [844], 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App. 1992). The record does not indicate that the circuit court's findings are clearly erroneous. In fact, it supports those findings.[1] Therefore, the appellant's argument is without merit.
 II.
Second, the appellant argues that the circuit court improperly denied his motions to amend his petition and the discovery agreements. A review of the procedural history of the proceedings in the circuit court is essential to evaluate this claim. The appellant filed his Rule 32 petition on April 2, 1997, and the circuit court appointed counsel to represent him. After two attorneys had been appointed and granted leave to withdraw because of their lack of experience in death penalty cases, the circuit court appointed John W. Stahl. In August 1998, Stahl filed a motion to withdraw, citing the appellant's remarks to him that "he was going to be filing something himself asking that counsel be removed from the case and that he did not wish [Stahl] to represent him." (C.R. 113.) In *Page 443 
September 1998, the circuit court appointed Andrew A. Smith, and the New York law firm of Paul, Weiss, Rifkind, Wharton Garrison appeared pro bono. New York attorneys Lauren Panora, Holly D. Jarmul, and Julia Tarver applied for pro hac vice admission to the Alabama State Bar. In April 1998, Smith filed a motion to withdraw, stating that he had a conflict in continuing to represent the appellant. In April 1999, the circuit court issued a scheduling order that provided that all discovery and amendments to the petition were to completed by November 15, 2000. The circuit court noted that all parties had agreed to this timetable. In July 1999, Paula W. Watkins filed a notice of appearance as local counsel to assist the pro hac vice admittees. On September 29, 1999, the appellant filed an amended Rule 32 petition. On April 24, 2000, the circuit court issued an order dismissing 18 of the claims because they were procedurally barred. (C.R. 604-07.) In April 2000, the appellant moved to have his attorneys removed from the case because he was not satisfied with their representation and because they allegedly did not raise issues he wanted them to pursue. On June 8, 2000, he filed a second amended petition. On June 12, 2000, he filed a revised second amended petition, and the evidentiary hearing began.
On August 8, 2000, two months after the evidentiary hearing, the appellant moved to amend his Rule 32 petition, to examine six additional witnesses, and to hold another evidentiary hearing. The State objected, and the circuit court denied the motion on August 15, 2000. In September 2000, the appellant filed a pro se motion to nullify the proceedings in the circuit court on the ground that his attorneys were not licensed to practice law in Alabama. He also made other claims related to their performance, with which he was dissatisfied. In October 2000, attorneys Watkins, Panora, and Jarmul moved to withdraw, citing the comments the appellant had made in the motion to nullify and the disagreements they had had in their dealings with the appellant. In denying the motion to withdraw, the circuit court stated: "The Court takes notice of the fact that McWilliams has repeatedly attempted to manipulate these proceedings to affect delay in this matter. It is the opinion of the Court that this is simply another ploy to delay these proceedings." (C.R. 994.)
In January 2001, Stephen A. Strickland filed a notice of appearance. In February 2001, the circuit court allowed the appellant's New York attorneys to withdraw. In March 2001, the appellant moved to conduct additional discovery and to amend his Rule 32 petition. The circuit court denied that motion. Subsequently, in September 2001, the circuit court denied the Rule 32 petition.
The appellant argues that the circuit court erred in denying his motions to amend because Rule 32 proceedings are civil actions and therefore the liberal rules of amendment should be applied; because his attorneys in the Rule 32 proceedings rendered ineffective assistance;[2] because two of his attorneys never satisfied the requirements for pro hac vice admission to the Alabama State Bar; and because the State engaged in Brady violations.[3] He further argues that the State should be prohibited from arguing that he could not amend his Rule 32 petition because the State has "unclean hands."
Although Rule 32 petitions have been characterized as civil in nature, they are *Page 444 
governed by the Alabama Rules of Criminal Procedure. In this regard, Rule 32.4, Ala. R.Crim. P., provides, in part: "Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial." Further, Rule 32.7(b), Ala. R.Crim. P., specifically addresses amending Rule 32 petitions and provides: "Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment." (Emphasis added.)
The appellant filed his original timely Rule 32 petition on April 2, 1997. He filed an amended petition, which the circuit court accepted, on September 29, 1999. The circuit court struck the second amended petition that he filed on June 8, 2000, four days before the scheduled evidentiary hearing, and the revised second amended petition that he filed on the day the evidentiary hearing began. On August 8, 2000, the appellant filed a motion to amend his petition, to call six additional witnesses, and to have a one day evidentiary hearing. The circuit court denied that motion. Nine months after the evidentiary hearing, the appellant filed another motion requesting leave to amend his petition and to obtain further discovery. The circuit court also denied that motion.
The facts of this case are similar to those presented to this court in Neelley v. State, 642 So.2d 494 (Ala.Crim.App. 1993), and Cochran v. State, 548 So.2d 1062 (Ala.Crim.App. 1989). InNeelley, the petitioner attempted to amend her Rule 32 petition after the evidentiary hearing had been held and after she had already filed one amended petition. In upholding the circuit court's denial of the motion to amend, this court stated:
 "The appellant argues that the trial court abused its discretion in denying her second motion to amend her petition. In that amendment to her petition, the appellant alleged racial discrimination in the selection of jurors, an improper jury instruction on reasonable doubt, and the unconstitutionality of the Alabama statute concerning compensation of attorneys in capital cases, § 15-12-21, Code of Alabama.
These latter two issues are addressed by the appellant on this appeal. The trial court denied the appellant's motion to amend on the grounds that the amendment `comes after the evidentiary hearing was completed in the case and is not based upon surprise, newly discovered evidence or changed circumstances.'
 "`Rule 20.7(b) of the Alabama Temporary Rules of Criminal Procedure [now Rule 32.7(b), Alabama Rules of Criminal Procedure] reads as follows: "Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment." (Emphasis added [in Cochran].) The clear import of the language used in Rule 20.7(b) [Rule 32.7(b)] is that a petitioner does not have an absolute right to amend his petition prior to the entry of judgment.
 "`"Amendments are to be freely allowed when justice requires." Ex parte Tidmore, 418 So.2d 866, 868
(Ala. 1982). "[A]mendments should be freely allowed and . . . trial judges must be given discretion to allow or refuse amendments. . . . The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial." Record Data International, Inc. v. Nichols, 381 So.2d 1, 5 (Ala. 1979) (citations omitted). "The grant or denial of leave to amend is a matter within the *Page 445 
sound discretion of the trial judge and is subject to reversal on appeal only for an abuse of that discretion. Walker v. Traughber, 351 So.2d 917
(Ala.Civ.App. 1977). The trial court acts within its discretion so long as its disallowance of an amendment of pleadings is based upon some valid ground, such as an actual prejudice or undue delay. Poston v. Gaddis, 372 So.2d 1099 (Ala. 1979)." Ex parte Reynolds, 436 So.2d 873, 874 (Ala. 1983). Although the cases cited in this paragraph deal with the interpretation of Rule 15, A.R.C.P. [Temp.], the principles expressed have equal application here.'
 "Cochran v. State, 548 So.2d 1062, 1075
(Ala.Cr.App. 1989). In Cochran, defendant attempted to amend his petition eight months after it had originally been filed, after the evidentiary hearing had begun, after the circuit court had ruled on a related ground asserted in his petition, and after having previously filed a motion to amend. This court held:
 "`Cochran cannot claim that his proposed amendment was based on surprise, newly discovered evidence, or changed circumstances. "Courts may properly refuse permission to amend . . . where there is no showing of diligence or that the facts were unknown to the applicant prior to his application." 61 Am.Jur.2d, § 312 at 301 (1981). See also Robinson v. Kierce, 513 So.2d 1005, 1006-07 (Ala. 1987); National Distillers and Chemical Corp. v. American Laubscher Corp., 338 So.2d 1269, 1273-75 (Ala. 1976).'
 "Id. See also Whitehead v. State, 593 So.2d 126
(Ala.Cr.App. 1991). In this case, where the appellant failed to file the motion for leave to amend until seven months after the evidentiary hearing had been held and because the claims asserted in that amendment were not based on surprise, newly discovered evidence, or changed circumstance, we find no abuse of discretion by the trial court. The appellant attempts to raise in her brief to this court the same claims that were included in the second amendment; these claims are procedurally barred. Rules 20.2(a)(3), 20.2(a)(5), 20.2(b), A.R. Cr. P. Temp."
642 So.2d at 496-97.
First, the circuit court struck the second amended petition and the revised second amended petition because the appellant filed them on the eve of or on the first day of the evidentiary hearing and because it would have unduly prejudiced the State in defending against the allegations. In this regard, the circuit court stated:
 "Petitioner's Second Amended Petition and Revised Amended Petition were filed in violation of this Court's express scheduling order. (EH at 17-18) Moreover, Petitioner used this filing to add two new issues on the eve of the hearing that he was well aware of in time to have properly raised them before the Court. (EH at 20-21, 27; Issues V and VI of the trial brief) Petitioner has made no pretense that these issues were in any way the result of newly discovered evidence and, by deliberately delaying setting them forth until the eve of the hearing, Petitioner greatly prejudiced the Respondent's ability to adequately refute these claims.
 "As the Court of Criminal Appeals has recently reaffirmed, Rule 32.7(d) does not grant an absolute right to amend a petition at any time. Siebert v. State, [778 So.2d 842 (Ala.Crim.App. 1999)]. `The granting or denial of a motion to amend a Rule 32 petition is within the sound discretion of the trial court, whose ruling on such a motion will be reversed only for an abuse of discretion. Neelley *Page 446 v. State, 642 So.2d [4]94, 497 (Ala.Cr.App. 1993).' Siebert v. State, [778 So.2d at 848].
 "Because Petitioner deliberately violated this Court's scheduling order to his own benefit, and to the detriment of the Respondent, Petitioner's untimely petition is, hereby, rejected by this Court. Based on the foregoing, this Court GRANTS Respondent's Motion to Strike Petitioner's Revised Second Amended Petition."
(C.R. 1754-55) (footnote omitted).
A review of the second amended petition and the revised second amended petition shows that the appellant raised two claims that he did not raise in the original petition or the first amended petition. The second amended petition added a juror misconduct claim. The revised second amended petition added a claim entitled "Destruction of Evidence." (C.R. 826.) The appellant's entire argument on this destruction of evidence claim consisted of the following: "Upon information and belief, the State and/or its agents, in bad faith, and/or recklessly, and with conscious disregard of petitioner's rights, lost or destroyed critical evidence, including the physical evidence from the crime. Scientific testing of this evidence would have exonerated the petitioner." (C.R. 826.) The appellant did not raise either of these claims in the timely filed Rule 32 petition. Further, neither claim related back to any claim he raised in the timely Rule 32 petition. Therefore, both of these claims were barred by the limitations period set forth in Rule 32.2(c), Ala. R.Crim. P.See Charest v. State, 854 So.2d 1102 (Ala.Crim.App. 2002). The appellant filed both his second amended petition and his revised second amended petition in violation of the circuit court's express scheduling order; he filed both too near the scheduled evidentiary hearing; and both raised issues that were time-barred. Accordingly, the circuit court did not abuse its discretion in refusing to entertain the appellant's second amended petition and his revised second amended petition.
The circuit court also properly refused to allow the appellant to amend his petition in August 2000 — two months after the evidentiary hearing. In its objection to this amendment, the State asserted:
 "[The appellant] has made no representation that these six additional witnesses were unavailable at the time of the hearing or that he ever intended to call them as witnesses. In fact, Dr. John McDuffie was slated to testify on behalf of the State and was present in the court room during the third day of testimony. William Landrum was also present and was actually barred from the court room at McWilliams's request. Charles Freeman was on the State's witness list and McWilliams knew that he was available to testify on the fourth day of the hearing. Moreover, Lieutenant McFerrin assisted in providing security for this Rule 32 proceeding and was, therefore, certainly available for questioning. There is simply no reason why McWilliams could not have called the six witnesses during the week set aside for his evidentiary hearing."
(C.R. 897.) Further, the appellant did not raise his Brady
claim in his timely Rule 32 petition. Rather, he first raised it when he filed an amended petition in September 1999, approximately two years after the expiration of the limitations period set forth in Rule 32.2(c), Ala. R.Crim. P. A Brady claim is subject to the procedural default grounds set forth in Rule 32, Ala. R.Crim. P.[4] See Williams v. State, *Page 447 782 So.2d 811 (Ala.Crim.App. 2000). Therefore, even if the circuit court had granted leave to amend two months after the evidentiary hearing had been held, the appellant would be barred from litigating this claim because it was time-barred and it did not relate back to any claim contained in his timely petition. SeeCharest, supra.
Finally, the circuit court did not abuse its discretion in denying the motion to amend that the appellant's new attorneys filed nine months after the evidentiary hearing. When ruling on this motion, the circuit court stated:
 "Petitioner filed a request to amend his Rule 32 petition and for this Court to grant his `motion for reconsideration of Petitioner's pro se motion to amend petition for relief and examination of additional witnesses.' As this Court correctly noted at the hearing, to grant such requests would be to violate this Court's express scheduling order. (EH at 17-18) This matter has been thoroughly litigated and now Petitioner seeks to add more issues after the close of the evidence. Petitioner has failed to specify what additional issues he wishes to raise and has made no pretense that these issues were in any way the result of newly discovered evidence. By deliberately failing to set forth these new claims and delaying mention of them until after the hearing, Petitioner's request serves only to further delay these proceedings.
". . . .
 ". . . Petitioner states his primary claim as follows: `Based upon the State's pattern and conduct, it is entirely conceivable that the State in bad faith had this evidence intentionally destroyed.' (Petitioner's Motion at 5) `It is ludicrous for the physical evidence to be destroyed when anyone with a functioning brain would know that [sic] person on death row is going to challenge his conviction and sentence.' (Id.) Petitioner then concludes that, `Beyond a reasonable doubt (and the burden is only by a preponderance), the evidence is overwhelming that the State engaged in a pattern and practice of Brady violations, prosecutorial misconduct during his trial, at least one witness that committed perjury, and the evidence from this case has been thrown away, presumably at the request of the State. Therefore, the State has violated every equity principle known to our legal system.' (Id. at 15)
 "It is based on these allegations that the Petitioner asks this Court to grant his requests as sanctions against the State for its alleged misconduct. (Id. at 15-16) Petitioner offers no evidence in support of these assertions of misconduct. Petitioner has known for some time that the physical evidence in this case is missing and, during the evidentiary hearing, was given every opportunity to offer evidence as to what happened to it and failed to do so. The Court takes notice of the fact that there is no indication that the State effected the destruction of this evidence, nor is there any evidence to support Petitioner's other generalized assertions of error.
 "Because Petitioner has failed to offer any credible evidence to support his requests for permission from this Court to amend his petition, the Court hereby DENIES Petitioner's Motion to Amend and For Reconsideration." *Page 448 
(C.R. 1674-76.) The circuit court did not abuse its discretion in denying the motion to amend that the appellant's new attorneys made nine months after the evidentiary hearing and after the close of the evidence. See Neelley, supra; Cochran, supra.
The appellant also argues, as part of this issue, that his New York attorneys were never admitted to practice law in Alabama. The record shows that attorney Panora was admitted pro hac vice to the Alabama State Bar in late 1998. However, it appears that there was some problem with Jarmul's application. The record shows that Jarmul submitted a pro hac vice application pursuant to Rule VII, Rules Governing Admission to the Alabama State Bar, on December 21, 1998, and that application was returned to her. This new application is stamped resubmitted to the circuit court on January 11, 1999. This application appears to fully comply with Rule VII. Attorney Julia Tarver is not referenced in any pleading until May 2000, when her name appears at the bottom of a pleading with a notation that she had applied for pro hac vice admission to the Alabama State Bar. The record also shows that only one attorney — attorney Panora — signed all of the pleadings in this case. In fact, her name is the only name that appears on the majority of the pleadings. Panora's application for pro hac vice admission was approved in the early stages of the proceedings before any pleadings were filed. With regard to this contention, the circuit court stated:
 "1. Based on the correct representations of said counsel that their applications to proceed pro hac vice had been submitted to the Bar prior to the hearing date, this Court ordered that Julia Tarver and Holly Jarmul be admitted.
 "2. This order was entered prior to the beginning of the Rule 32 evidentiary hearing in this case and, therefore, Julia Tarver and Holly Jarmul were both admitted pro hac vice so that their participation in the evidentiary hearing was proper.
 "3. This Court knows of no evidence of misconduct on the part of McWilliams's attorneys and takes notice of their more than competent representation during the Rule 32 proceedings. Both attorneys exhibited a more than adequate knowledge of Alabama law and represented McWilliams to the best of their abilities."
(C.R. 983-84.) The circuit court correctly resolved this issue.
Finally, the appellant argues that the State should be estopped from arguing that he could not amend his petition because it has "unclean hands." He bases this argument on a contention that the State committed numerous Brady violations. As the Alabama Supreme Court noted in Friendly Credit Union v. Campbell,579 So.2d 1288, 1291 (Ala. 1991), "[t]his defense is sometimes applied in an equitable proceeding to deny relief to a plaintiff who has himself acted improperly, i.e., with `unclean hands,' in regard to the very transaction as to which he is seeking the aid of equity, the conscience of the court." We are not aware of any Alabama case that applies this equitable principle to Rule 32 proceedings. Therefore, the appellant's argument is without merit.
Under the facts presented in this case, the circuit court did not abuse its discretion in denying the appellant's motions to amend his petition. It is evident that the appellant caused the majority of the delays in this case. If we were to hold that the circuit court abused its discretion in denying the motions to amend, we would reward the appellant for his repeated and intentional efforts to delay and disrupt the circuit court proceedings. We would also *Page 449 
allow an attorney, who is appointed to a case at the final stages of a circuit court proceeding, to relitigate a case from start to finish. There is a point at which disputed issues are fully litigated and the circuit court can with some degree of confidence issue a final ruling on a Rule 32 petition. See Rhonev. State, [Ms. CR-02-0493, January 30, 2004] ___ So.2d ___ (Ala.Crim.App. 2004). Here, the circuit court allowed the appellant to amend the Rule 32 petition, the State filed its answer to that amendment, and the court issued a ruling partially dismissing 18 claims as procedurally barred. Based on the facts presented in this case, we conclude that the circuit court did not abuse its discretion in denying the appellant's subsequent motions to amend his Rule 32 petition.
 III.
Third, the appellant argues that the circuit court erred in dismissing several of his claims on the grounds that he did not sufficiently plead them. Specifically, he contends that the circuit court's ruling violates Rule 32.7(d), Ala. R.Crim. P., which provides that, if the court determines that the petition is not sufficient, it may allow the petition to be amended. In effect, he asserts that a circuit court should never bar a claim as insufficiently pled and should always allow a petitioner to amend his petition. He cites the commentary to Rules 8, 9, and 78, Ala. R. Civ. P., in support of his contention.[5]
However, he does not cite any specific issue that he believes the circuit court erroneously dismissed as insufficiently pled. Instead, he simply makes broad, bare assertions.
As we previously stated, Rule 32 petitions are governed by the Alabama Rules of Criminal Procedure rather than by the Alabama Rules of Civil Procedure. See Rule 32.4, Ala. R.Crim. P. If we were to agree with the appellant's argument, we would be disregarding the plain language of Rule 32.7(d), Ala. R.Crim. P., which provides, in part:
 "If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition."
(Emphasis added.) Accordingly, the appellant's argument is without merit.
 IV.
Fourth, the appellant argues that the circuit court erred in holding that the following claims were procedurally barred:
 1. The trial court erred because it did not adequately advise him of the dangers involved in assisting his counsel in his defense;
 2. The trial court erred in not suppressing his lineup identification;
 3. The prosecutor engaged in repeated and highly prejudicial misconduct throughout the trial; and
 4. His trial attorneys rendered ineffective assistance due to allegedly inadequate compensation.
The circuit court found that Claims 2 and 3 were procedurally barred because they were raised or addressed at trial and were addressed on direct appeal. See Rule 32.2(a)(2) and (4), Ala. R.Crim. P. It also *Page 450 
found that all four claims were procedurally barred because the appellant could have raised them on appeal. See Rule 32.2(a)(5), Ala. R.Crim. P.
Claim 1 was procedurally barred because the appellant could have raised it at trial and on direct appeal. See Rule 32.2(a)(3) and (5), Ala. R.Crim. P. Moreover, the record from the direct appeal in this case shows that the appellant filed a motion to allow him to participate in the case. (A.C.R. 1514.) There was a discussion about this motion on the record, and it is clear that the circuit court advised the appellant against participating in his case. (A.R. 299-300.) Therefore, the appellant's argument is without merit.
The circuit court correctly found that Claims 2 and 3 were procedurally barred because the appellant raised them and we addressed them on direct appeal. See Rule 32.2(a)(4), Ala. R.Crim. P. Nevertheless, the appellant argues that we should reconsider his claims because "this brief has new evidence that this Court should consider under the `law of the case' doctrine." (Appellant's brief at p. 105.)[6] However, Rule 32.2(a)(4), Ala. R.Crim. P., specifically provides that, when an issue has been addressed on direct appeal, it cannot be relitigated in a Rule 32 proceeding. Therefore, the appellant's argument is without merit.
The circuit court erroneously held that Claim 4 relating to ineffective assistance of counsel was procedurally barred in this Rule 32 proceeding. However, this court may affirm a circuit court's denial of a petition if it is correct for any reason.See Reed v. State, 748 So.2d 231 (Ala.Crim.App. 1999). With regard to this contention, the circuit court found:
 "The only testimony elicited at the hearing on this issue demonstrated that trial counsel did not allow the compensation limits to prevent them from working on the case and that they did not neglect this case because of those limits. (EH at 100-101, 146, 210, 213, 282) Thus, there is no evidence in support of Petitioner's claim."
(C.R. 1820-21.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on this ground.
 V.
Fifth, the appellant argues that his Rule 32 attorneys rendered ineffective assistance. He recognizes that we have held that, because there is not a right to counsel in a collateral proceeding, there cannot be a claim that counsel rendered ineffective assistance. However, he argues that, because Alabama has chosen to provide a postconviction remedy, it must ensure that that remedy complies with due process requirements. The Northern District of Ohio addressed a similar argument as follows:
 "[Petitioner] asserts that because the Ohio post-conviction statutes create a due process property interest in his right to counsel during post-conviction proceedings, he has a concomitant right to constitutionally effective assistance of counsel during his collateral attack. While petitioner acknowledges that he has no constitutional right to post-conviction counsel, he asserts that, pursuant to Evitts v. Lucey, 469 U.S. 387, 401, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), `when a State opts to act in a field where its action has significant discretionary elements, *Page 451 
it must nonetheless act in accord with the dictates of the Constitution — and, in particular, in accord with the Due Process Clause.' Consequently, petitioner asserts, post-conviction counsel's failure to attach documents in support of his ineffective assistance claims unconstitutionally divested him of this property interest.
 "The United States Supreme Court disagrees. In Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Court held that a post-conviction petitioner has no right to counsel. Noting that the source of the right to post-conviction counsel was created pursuant to Pennsylvania statute, the Court reasoned that it is the source of the right to counsel, combined with the type of proceeding, that implicates a constitutional right to counsel, and, thus, whether there can be a due process violation. Explicitly rejecting the argument the petitioner makes here, the Finley
Court held Evitts inapplicable to state habeas proceedings because `the substantive holding of Evitts — that the State may not cut off a right to appeal because of a lawyer's ineffectiveness — depends on a constitutional right that does not exist in state habeas proceedings.' Id. at 558, 107 S.Ct. 1990."
Taylor v. Mitchell, 296 F.Supp.2d 784, 802-03 (N.D.Ohio 2003). Also, this court has stated:
 "It is clear under Alabama law that there is no requirement that indigent petitioners be furnished counsel regarding post-conviction proceedings. Ex parte Cox, 451 So.2d 235, 237 (Ala. 1983). Because a state prisoner `ha[s] no constitutional right to coram nobis [now Rule 32] counsel, see Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), he cannot excuse a procedural default based upon ineffective assistance rendered by that counsel. See [Wainwright v.] Torna, 455 U.S. [586,] 587-88, 102 S.Ct. [1300,] 1301-02, [71 L.Ed.2d 475 (1982)].' Toles v. Jones, 888 F.2d 95, 99-100
(11th Cir. 1989)."
Mayes v. State, 563 So.2d 38, 39 (Ala.Crim.App. 1990). Therefore, the appellant's argument is without merit.
 VI.
Sixth, the appellant argues that the State violated Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, he raised only one of the claims he presents in his brief — i.e., that there was evidence that two inmates who testified against him had a motive to lie, that their testimony was contradicted by evidence at the scene, and that the witnesses lied about receiving favorable treatment — before the circuit court.[7] Moreover, he raised that claim in his amended petition, which he filed well outside of the limitations period set forth in Rule 32.2(c), Ala. R.Crim. P. The claim would be considered timely only if it related back to a claim in the original timely filed petition. See Charest, supra. However, it did not. Therefore, that claim is time-barred. See Rule 32.2(c), Ala. R.Crim. P. Accordingly, the appellant is not entitled to relief in this regard.
 VII.
Finally, the appellant argues that his trial and appellate attorneys rendered ineffective assistance. In Chandler v.United States, 218 F.3d 1305 (11th Cir. 2000), the United States Court of Appeals for the Eleventh Circuit stated: *Page 452 
 "The purpose of ineffectiveness review is not to grade counsel's performance. See Strickland, 104 S.Ct. at 2065; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) (`We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that `[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or `what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
". . . .
 ". . . Because the reasonableness of counsel's acts (including what investigations are reasonable) depends `critically' upon `information supplied by the [petitioner]' or `the [petitioner]'s own statements or actions,' evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S.Ct. at 2066. `[An] inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.' Id. (`[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.')."
Chandler, 218 F.3d at 1313-19 (footnotes omitted). Also, when ineffective-assistance-of-counsel claims involve the penalty phase of a capital murder trial, the focus is on "`whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993), quoted in Daniels [v. State], 650 So.2d [544,] 568 [(Ala.Crim.App. 1994)]." Jones v. State, 753 So.2d 1174, 1197
(Ala.Crim.App. 1999). See also Williams v. State, 783 So.2d 108
(Ala.Crim.App. 2000).
The appellant argues that neither the State nor the circuit court denied the fact that Rule 32 counsel was able to find additional mitigating evidence that his trial attorneys did not present. In his original brief, he does not state what additional mitigating evidence his attorneys did not present. In a supplemental brief, he presents a laundry list of evidence that he asserts his attorneys should have presented to the jury. The evidence related to his troubled childhood and his alleged bipolar disorder.
The only issue in the appellant's Rule 32 petition that is related to the presentation of evidence about his childhood is the claim that counsel did not investigate his background, conduct in-depth interviews with his family members, or otherwise develop this type of evidence. With regard to this claim, the circuit court made the following findings:
 "Petitioner contends that trial counsel failed to investigate his background, conduct in depth interviews with family members, or otherwise develop evidence relevant to an appropriate punishment. *Page 453 
As previously noted, trial counsel prepared this case in a reasonable and diligent manner and, based on the information gathered in their investigation, trial counsel reasonably determined to portray Petitioner as a man who had suffered from emotional problems most of his life that had gone untreated. . . . Petitioner now bases his contentions to the contrary upon the testimony of Jan Vogolsang, a social worker, and upon the allegation that trial counsel should have called Dr. Charles Herlihy to testify.
 "As to Dr. Herlihy. . . . Petitioner has offered no additional argument in support of this claim and cites this Court to exhibit 35, an exhibit this Court admitted for a limited purpose. (Brief at 17-18; See Order On The Admission Of Exhibits Presented At The Rule 32 Evidentiary Hearing) This exhibit was admitted for the sole purpose of showing that the document was in [defense counsel's] file. Petitioner offered no evidence that anything in the exhibit is true. Petitioner was free to call Dr. Herlihy as a witness in support of his petition. Moreover, defense counsel specifically stated that it did not remember why Herlihy was not called. (EH at 251) When trial counsel has no memory of the reasoning behind a decision, it will be presumed that it acted properly. See Williams v. Head, 185 F.3d at 1236. Petitioner has offered nothing to rebut this presumption and has not even attempted to demonstrate that but for counsel's failure to call Herlihy as a witness, the outcome of the trial would have been different. In fact, Petitioner's counsel has, in this claim, argued that trial counsel was ineffective for failing to call a witness that they themselves failed to call. This claim is without merit.
 "As to Jan Vogolsang, Petitioner's present counsel has failed to do exactly what it now contends trial counsel was ineffective for failing to do. Petitioner's counsel failed to call any of the `friends, relatives, neighbors, and even treating physicians' it alleges should have testified and, instead, offered the testimony of Jan Vogolsang, a social worker from South Carolina, as a `mitigation expert.' (Brief at 17) In short, rather than calling witnesses to testify where they can be subjected to cross-examination, Petitioner's counsel called a paid witness to tell what these witnesses allegedly would have said, had they been called, without attempting to offer proof that Vogolsang had even conducted these interviews, much less what these people actually said. In support of this one paragraph allegation of attorney misconduct, Petitioner provides only assertions and string cites."
(C.R. 1801-03.)
The record from the direct appeal shows that the appellant's mother testified during the penalty phase of the trial about the appellant's troubled childhood. (A.R. 1303-18.) The appellant also testified and echoed his mother's testimony about an accident that occurred when he was about 13 years of age in which his skull was fractured, the problems he experienced as a result of that accident, and the medication he took to control his headaches after the accident. In addition, he was allowed to read into evidence a psychological report that concluded that he had mental problems. Therefore, the record shows that the appellant's attorneys developed and presented evidence about his childhood during his trial. "Prejudicial ineffective assistance of counsel under Strickland cannot be established on the general claim that additional witnesses should have been called in mitigation.See Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir. 1984); seealso Bassette v. Thompson, *Page 454 915 F.2d 932, 941 (4th Cir. 1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial." Smith v. Anderson,104 F.Supp.2d 773, 809 (S.D.Ohio 2000), aff'd, 348 F.3d 177 (6th Cir. 2003). "There has never been a case where additional witnesses could not have been called." State v. Tarver, 629 So.2d 14, 21
(Ala.Crim.App. 1993). Accordingly, the appellant has not satisfied his burden under Strickland as to this claim.
With regard to the appellant's claim that counsel rendered ineffective assistance by not presenting evidence about his mental disorder, the circuit court made the following findings:
 "In support of his claim that trial counsel were ineffective in failing to call a mental health expert during the penalty phase, McWilliams presented the testimony of Dr. George Woods, a psychiatrist from California. (EH. 789) Dr. Woods diagnosed Mr. McWilliams as suffering from `bipolar disorder with symptoms of both mania, hypomania, and depression.' (EH. 872) Dr. Karl Kirkland, a forensic psychologist, testified as a rebuttal witness for the State. (EH. 927) He disagreed with Dr. Woods's diagnosis of bipolar disorder based in part on the fact that `that diagnosis has never appeared in all the records that are present, plus that [McWilliams] was never treated with a primary drug for bipolar disorder such as Depakote or Lithium.' (EH. 974) Dr. Kirkland testified that `a character disorder . . . is what explains more of his behavior than any other diagnostic category' and noted that this conclusion and diagnosis was consistent with the Taylor Hardin records. (EH. 964-65) For the following reasons, McWilliams's claim regarding counsel's failure to call a mental health expert is denied.
". . . .
 ". . . McWilliams's claims based upon the testimony of Dr. Woods are without merit. . . .
"`. . . .
 "The trial transcript reveals that on January 21, 1986, trial counsel filed a `Petition For Inquisition Upon Alleged Insane Prisoner.' (R. 1526) The request was granted by the trial court and McWilliams was sent to Taylor Hardin [Secure Medical Facility] to undergo a comprehensive mental evaluation. (R. 1528) During the evidentiary hearing, trial counsel testified that he requested the mental evaluation to address the issue of insanity, but also for the purpose of seeking mitigation in preparation for a possible penalty phase. (EH. 156-57) The trial record supports this testimony. The request for the evaluation itself is based upon the relevance of mental heath issues to the sentencing stage of a capital trial and the trial court's order specifically directed McWilliams to be evaluated `as to existence of mitigating circumstances.' (R. 1526, 1528) McWilliams remained at Taylor Hardin for an extended period of time. During his stay, he was continuously observed and was specifically evaluated by three psychiatrists. (R. 1544) The consensus opinion of the Lunacy Commission was that McWilliams did not suffer from a mental illness and two of the three psychiatrists specifically stated that they found no evidence of mitigation. (R. 1544-47)
 "Trial counsel testified that, in addition to the request for a formal evaluation, he also obtained the help of a `local psychologist' to assist him in evaluating any mental health issues. (EH. 136-37) Specifically, trial counsel stated that Dr. Marianne Rosenzweig was recruited to help `with interpretation and understanding *Page 455 
of existing records' and in evaluating possible mitigation. (EH. 137) For example, counsel and Dr. Rosenzweig reviewed and discussed the Taylor Hardin records and determined that `there was nothing that we felt was going to be useful in mitigation.' (EH. 137) Counsel additionally made repeated attempts to make contact with a psychologist in Mobile (Dr. Rhodes) who had previously evaluated McWilliams. (EH. 133) They even subpoenaed Dr. Rhodes in an effort to obtain her presence during penalty phase, but she did not comply. (R. 1319) This Court finds that counsel made a reasonable decision not to enforce the subpoena that was not `outside the wide range of professionally competent assistance.' The record additionally establishes that counsel was successful in obtaining a neuropsychological assessment. (R. 1632) Specifically, the evaluation was conducted following the penalty phase, but prior to the final sentencing hearing. Dr. John Goff conducted the evaluation and his resulting report was admitted into evidence.
 "Plainly, trial counsel considered, investigated and presented evidence relating to McWilliams's mental health. Both McWilliams and his mother testified at the penalty phase regarding the issue. (R. 1303, 1321) McWilliams was even allowed to read into evidence — and subsequently admit into evidence — a report prepared by Dr. Maurice K. Davis, a psychologist who had previously tested McWilliams. The fact that counsel's efforts did not result in a sentence less than death does not make their performance deficient."
(C.R. 1809-13.) The record supports the circuit court's findings, and we adopt them as part of this opinion.
The appellant also objects to the following comments from the introductory portion of the circuit court's order denying his petition:
 "As a final introductory observation, this Court notes that, at the time of their representation of Petitioner, both [defense attorneys] were attorneys in private practice who were appointed to the case due to their status and responsibility as members of the Tuscaloosa County Bar. In these proceedings, Petitioner has been represented by members of the New York based law firm, Paul, Weiss, Rifkind, Wharton 
Garrison. The firm is very large, having more than 100 partners alone and offices in Washington, D.C., Paris, France, Tokyo, Japan, Beijing, China, and Hong Kong. Moreover, Petitioner was represented at the Rule 32 hearing by three lawyers and had stand by local counsel. . . . Two other support personnel were additionally present on behalf of Petitioner."
(C.R. 1796.) We do not conclude that these comments, which were part of the introduction to the order and not the findings of the court, were objectionable.
The appellant further argues that his attorneys rendered ineffective assistance on direct appeal. His entire argument on this issue consists of the following: "James McWilliams' appellate counsel was ineffective to the extent that there were issues that they could have raised but he failed to raise on appeal." (Appellant's brief at p. 131.) In its order, the circuit court found that this issue merely consisted of "single sentence assertions" that did not satisfy the pleading requirements set forth in Rule 32.6(b), Ala. R.Crim. P. (C.R. 1822.) It also stated:
 "In the alternative, this Court notes that at no time does Petitioner even suggest that he was prejudiced by these alleged instances of ineffective assistance of counsel. Moreover, Petitioner *Page 456 
bears the burden of proof in these proceedings and failed to offer any evidence, or additional argument, in support of these claims."
(C.R. 1823.) We agree with the circuit court's findings and adopt them as part of this opinion.
Finally, the appellant argues that the circuit court erred in striking attorney Kevin McNally's testimony. McNally was called as an expert to testify about what constituted ineffective performance of counsel. When it excluded his testimony, the circuit court stated:
 "The Court, as the trier of fact in these proceedings, plainly does not need the assistance of McWilliams's expert to `understand the evidence' or `determine a fact in issue.' In fact, the Court is in a much better position than Mr. McNally to evaluate the legal issues presented by McWilliams's petition for relief. In addition to service on the bench, the Court has the benefit of the experience of having practiced law in Alabama for many years and was practicing law before, and at the time of, this trial. (EH at 436)
 "Mr. McNally, on the other hand, is not a licensed attorney in Alabama and has never even represented a client in this State. (EH at 388) During voir dire, McNally repeatedly demonstrated his ignorance of Alabama law, but was offered as an expert both as to national and Alabama standards of practice."
(C.R. 1764.) We do not find that there was any error in the circuit court's ruling striking McNally's testimony. As the Supreme Court of New Mexico stated in Lytle v. Jordan,130 N.M. 198, 211-12, 22 P.3d 666, 679-80 (2001):
 "The issues of whether defense counsel performed below the level of a reasonably competent attorney and whether deficient performance affected the result of the trial `are mixed questions of law and fact,' Strickland, 466 U.S. at 698, 104 S.Ct. 2052, which `require the application of legal principles to the historical facts of this case.' Cuyler v. Sullivan, 446 U.S. 335, 342, 100 S.Ct. 1708, 64 L.Ed.2d 333
(1980). The district court's determination of these questions represents `a conclusion of law rather than a finding of fact.' Id. at 341, 100 S.Ct. 1708. . . .
 ". . . We believe it is superfluous for expert witnesses to advise a court, whether it is the district court or an appellate court, about the proper application of existing law to the established historical facts and about the ultimate issue of trial counsel's effectiveness. See Provenzano v. Singletary, 148 F.3d 1327, 1331-32 (11th Cir. 1998); Parkus v. State, 781 S.W.2d 545, 548 (Mo. 1989) (en banc); State v. Thomas, 236 Neb. 553, 462 N.W.2d 862, 867 (1990); State v. Moore, 273 N.J.Super. 118, 641 A.2d 268, 272 (1994); Commonwealth v. Neal, 421 Pa.Super. 478, 618 A.2d 438, 439 n. 4 (1992)."
 VIII.
After the United States Supreme Court released its decision inRing v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556
(2002), extending its prior holding in Apprendi v. New Jersey,530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to capital defendants, we requested that the parties brief the applicability of that decision to the appellant's death sentence. In Ring, the United States Supreme Court held that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."536 U.S. at 589, 122 S.Ct. at 2432. We have since held that the decision in Ring does not apply retroactively to cases pending on collateral review. For example, in *Page 457 Boyd v. State, [Ms. CR-02-0037, September 26, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003), we stated:
 "[T]his court has held that Apprendi claims are not applied retroactively to postconviction proceedings. Sanders v. State, 815 So.2d 590, 592 (Ala.Crim.App. 2001). Our retroactivity analysis of Apprendi
applies equally to Ring. Accordingly, Ring claims are not applied retroactively to postconviction proceedings. Therefore, [the petitioner's] suggestion that Ring applies retroactively to his death sentence is without merit."
(Footnote omitted.)
Likewise, the appellant's death sentence does not violateAtkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242,153 L.Ed.2d 335 (2002), in which the United States Supreme Court held that it was a violation of the Eighth Amendment to the United States Constitution to execute a mentally retarded individual. A review of the direct appeal record shows that the appellant had been married and is the father of two children. The presentence report contains the following comment: "School personnel at Blount High School remembered McWilliams as being capable (intellectually) but as having problems with respect to discipline." (Presentence report, p. 8.) The appellant held various jobs in the food industry, had been in the United States Army, and had worked on an oil ring outside of New Orleans. There is not any indication that the appellant falls within any definition of mental retardation. See Ex parte Perkins, 851 So.2d 453 (Ala. 2002).
For the above-stated reasons, we affirm the circuit court's denial of the appellant's Rule 32 petition.
AFFIRMED.
McMILLAN, P.J., and SHAW and WISE, JJ., concur; COBB, J., concurs in the result.
[1] We note that the circuit court did make certain modifications to the State's proposed final order denying the appellant's petition. The State's proposed order is 42 pages, and the circuit court's order is 43 pages.
[2] This claim is addressed in Part V of this opinion.
[3] This claim is addressed in Part VI of this opinion.
[4] A Brady claim may be presented as a newly discovered evidence claim. However, to constitute newly discovered evidence, the evidence must satisfy the requirements articulated in Rule 32.1(e), Ala. R.Crim. P. The appellant did not attempt to present his Brady claim as newly discovered evidence.
[5] Rule 78, Ala. R. Civ. P., provides, in part: "Unless the court orders otherwise, an order granting a motion to dismiss shall be deemed to permit an automatic right of amendment of the pleading to which the motion is directed within ten (10) days from service of the order."
[6] The appellant does not identify what new evidence exists that he alleges should be considered.
[7] Because he did not first present the remaining Brady
claims to the circuit court, they are not properly before this court. See Morrison v. State, 551 So.2d 435 (Ala.Crim.App. 1989).