J-S54001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JAMES DELOE | : | |
| | : | |
| Appellant | : | No. 581 WDA 2017 |

Appeal from the PCRA Order March 17, 2017
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0000369-2008

BEFORE: PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY PANELLA, J.:                    **FILED NOVEMBER 09, 2018**

A jury convicted Michael Deloe of various crimes based on charges he sexually abused a five-year-old victim. Deloe did not testify in his own defense, and did not call character witnesses. He subsequently filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), asserting his counsel was ineffective due to these testimonial omissions. He now appeals from the dismissal of his PCRA petition. We affirm.

Deloe was charged with digitally penetrating the victim's vagina while showing her pornographic videos. The jury found him guilty of aggravated indecent assault, indecent assault, corruption of minors, and endangering the welfare of children. We affirmed his judgment of sentence on March 8, 2011. He filed the current petition on March 5, 2012. It was therefore a timely, first PCRA petition.

After several delays, the PCRA court concluded a hearing on the petition on December 31, 2014. The Commonwealth filed a brief in opposition to the petition on August 4, 2016, and the PCRA court entered an order dismissing the petition on March 17, 2017. This timely appeal followed.

On appeal, Deloe argues his trial counsel was ineffective in omitting character witness testimony and in interfering with Deloe's right to testify in his own defense. We proceed by determining whether the PCRA court's factual findings are supported by the record. *See Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012). In doing so, we read the record in the light most favorable to the prevailing party. *See id*. If this review reveals support for the PCRA court's credibility determinations and other factual findings, we may not disturb them. *See id*. We, however, afford no deference to the PCRA court's legal conclusions. *See id*., at 1194.

We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. *See Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017). To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced the petitioner. *See Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." **Commonwealth v. Barnett**, 121 A.3d 534, 540 (Pa. Super. 2015) (internal quotation marks and citations omitted).

Deloe's first claim on appeal is that counsel interfered with his right to testify in his own defense. "Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." **Commonwealth v. Miller**, 987 A.2d 638, 660 (Pa. 2009) (internal quotation marks and citations omitted).

After reviewing the parties' briefs and the certified record, we conclude the PCRA court's opinion thoroughly and adequately resolves the issue. **See** PCRA Court Opinion, 12/26/17, at 8-12 (finding no arguable merit to Deloe's first claim because counsel credibly testified he discussed the issue at least three times with Deloe, had advised Deloe it was not necessary, as Deloe's girlfriend would provide essentially the same testimony, and that counsel informed Deloe it was Deloe's decision to make).[1] Deloe's first issue on appeal merits no relief.

_____

[1] We have redacted the attached copy of the PCRA court's opinion to further protect the identity of the victim.

Next, Deloe argues counsel was ineffective by failing to call Jamie Pastin, Lisa Plutto, Pamela Shulzendorf, and Chris King to testify as to Deloe's good character in the community.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-1109 (Pa. 2012) (citations omitted). "To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial." **Commonwealth v. Pander**, 100 A.3d 626, 639 (Pa. Super. 2014) (*en banc*) (citation omitted).

Generally, the Pennsylvania Rules of Evidence prohibit the presentation of evidence of an accused's bad character at trial to establish that the accused acted pursuant to that character. **See Commonwealth v. Fletcher,** 861 A.2d 898, 915 (Pa. 2004). However, "the accused may offer witnesses to testify to the accused's relevant character traits." **Commonwealth v. Hoover,** 16 A.3d 1148, 1149 (Pa.Super. 2011) (citation omitted). "In order to prove this [relevant] trait of good character, the accused may opt to introduce evidence

of his or her *reputation among associates or within a particular community*."
**Fletcher**, 861 A.2d at 915 (emphasis supplied).

After reviewing the parties' briefs and the certified record, we conclude the PCRA court's opinion thoroughly and adequately resolves the issue. ***See*** PCRA Court Opinion, 12/26/17, at 15-20 (finding no arguable merit to Deloe's second claim as the affidavits revealed the witnesses would testify to their own opinion of Deloe's character, not his reputation in the community; also, there was a substantial amount of exculpatory circumstantial evidence presented to the jury; if the jury rejected that evidence in favor of the Commonwealth's evidence, it would not have been swayed by character evidence). Deloe's second issue on appeal merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/9/2018

- 5 -

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
                                 )
               v.                )      CP-63-CR-0000369-2008
                                 )
MICHAEL JAMES DELOE           )

## Opinion of Court

This matter comes before the Court upon Defendant's appeal from the PCRA court's Order dated March 17, 2017, denying his Post Conviction Relief Act (PCRA) Petition.

On April 13, 2017, Defendant, Michael James Deloe (hereinafter "Defendant"), through counsel, filed a timely Notice of Appeal to the Superior Court from the denial of his PCRA petition.

## Factual History

The facts of the case, as briefly summarized, are as follows:

Defendant collaterally appeals from the guilty verdict and subsequent sentencing stemming from charges that Defendant engaged in sexual conduct ███████████████ the "victim") sometime between November 1st and November 25th, 2007. The facts as presented by the Commonwealth were that while ███ was laying on the living room floor watching television, Defendant caused pornographic material to be displayed on the television, pulled down her underwear, laid on top of her, rubbed his penis on her vagina, and engaged in vaginal penetration with his finger. This incident occurred when both ███. and her then 9-year old brother ███., were spending the weekend with Defendant ████████████

1

APPENDIX
B

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Inconsistent testimony prevented the date of the incident from being affixed with exact certainty, but the fact that ▇▇▇ told his mother on November 25th, 2007, that he had seen Defendant "humping" his sister ▇▇▇, along with other corroborating evidence, suggested the incident occurred during ▇▇▇. and ▇▇▇'s last visit, over the weekend of Saturday, November 24th, 2007.[1]

## Procedural History

On February 14, 2008, the Washington County District Attorney's Office filed a criminal information against the Defendant charging one (1) count of Aggravated Indecent Assault,[2] one (1) count of Indecent Assault,[3] one (1) count of Corruption of Minors,[4] and one (1) count of Endangering the Welfare of Children.[5] Docket Entry 8. On June 12, 2008, Defendant's case was scheduled for a jury trial before the Honorable Judge Janet Moschetta Bell on Monday, July 21, 2008. Docket Entry 13. By motion of Defendant's counsel, the trial was continued until the trial term of November 2008, and a status conference was scheduled for September 30, 2008. Docket Entry 16. An application for continuance filed by the defense was granted on November 7, 2008 dictating that jury selection for the trial would be done on January 5, 2009, and trial to be scheduled during the January 2009 trial term, between January 5 and January 16, 2009. Docket Entry 17.

On January 15, 2009, the empaneled jury found the Defendant guilty on all four of the aforementioned counts for which he was charged. Docket Entry 18. On January 26, 2009, the

---

[1] TT 230. Numbers following "TT" are page numbers from the transcript of the trial conducted January 12th–15th, 2009.
[2] 18 Pa.C.S. § 3125(A)(1)(2)(7)(8).
[3] 18 Pa.C.S. § 3126(A)(1)(2)(7).
[4] 18 Pa.C.S. § 6301(a)(1).
[5] 18 Pa.C.S. § 4304(a)(1).

2

defense filed a motion to declare mistrial which was denied by the Honorable Judge Moschetta Bell that same day. Docket Entry 24. On March 2, 2009, Thomas Farrell entered his appearance on behalf of the Defendant for post-sentence motions, appeal, and the sentencing hearing. Docket Entry 25. On March 23, 2009, trial counsel for the Defendant, Todd Zwikl, filed a motion for leave to withdraw his appearance as counsel which was denied and counsel was ordered to appear with new counsel of record at sentencing. Docket Entry 26.

On April 1, 2009, Honorable Judge Moschetta Bell sentenced the Defendant as follows:

> On the charge of Aggravated Indecent Assault of a Child Under the Age of Thirteen, here, ████████████████ ████████, a Felony of the 1st degree, the Defendant is sentenced to pay the costs of prosecution; to be sentenced to SCI Pittsburgh or other state penal institution for intake and processing for confinement in an appropriate state penal institution for no less than six (6) years and no more than twelve (12) years with credit for time served as computed by the authorities at the Washington County Correctional Facility as indicated on DC-300B form; the Defendant is ordered to undergo sexual perpetrator counseling; to have no contact with the child victim, A.D., her family, and specifically, including her mother and minor brother, An.D.
>
> The Defendant is ordered to pay restitution in the amount of $335.00 to the North Strabane Township Police Department, 1929 Route 519 South, Canonsburg, Pennsylvania 15317. The Defendant is ordered to pay restitution to the Pennsylvania State Police Greensburg Regional Laboratory, 99 Westmoreland Avenue, Greensburg, Pennsylvania 15601-0436 in the amount of $175.00 for seminal stain identification and in the amount of $1,985.00 for handling fees and DNA analysis.
>
> No further sentence is being imposed upon the jury's guilty verdict on the Indecent Assault of a Child Under the Age of 13, a Misdemeanor of the 1st degree, due to merger principles.
>
> On the charge of Corruption of Minors, a Misdemeanor of the 1st Degree, the Court sentences the Defendant to pay the costs of prosecution; to be sentenced to SCI Pittsburgh or other state penal institution for intake and processing for confinement in an

3

appropriate penal institution for no less than one (1) year and no more than two (2) years consecutive with the Aggravated Indecent Assault of a Child Under the Age of Thirteen.

.     .     .

On the charge of Endangering the Welfare of Children, a Misdemeanor of the 1st Degree, the Defendant is sentenced to pay the costs of prosecution; to be sentenced to SCI Pittsburgh or other state penal institution for intake and processing for confinement in an appropriate penal institution for no less than one (1) year and no more than two (2) years consecutive with the Aggravated Indecent Assault sentence and consecutive to the Corruption of Minors sentence.

.     .     .

The Defendant's aggregate sentence, therefore, is a minimum of eight (8) years and maximum of sixteen (16) years. The Defendant is not eligible for RRRI consideration due to his conviction for Aggravated Indecent Assault and Indecent Assault. The Defendant is subject to Megan's Law....

Docket Entry 29.

On April 13, 2009, defense counsel filed a post-sentence motion which was denied on April 13, 2009. Docket Entry 31. On September 9, 2009, Thomas Farrell filed a notice of appeal on behalf of the Defendant appealing the judgment of sentence to the Superior Court of Pennsylvania. Docket Entry 34. On September 29, 2009, defense counsel filed a statement of errors complained of on appeal. Docket Entry 36. Honorable Judge Moschetta Bell rendered an opinion December 31, 2009 regarding Defendant's appeal of his sentence of April 1, 2009. Docket Entry 38. On March 8, 2011, the Superior Court of Pennsylvania entered an order affirming the sentence of April 1, 2009. Docket Entry 38. On March 5, 2012, Michael Healey, listed as counsel of record, filed a Post Conviction Relief Act Petition on behalf of the Defendant. Docket Entry 40. Thomas Farrell filed a motion for leave to withdraw as counsel on March 19, 2012, which was granted by Honorable Judge Moschetta Bell on April 2, 2012.

4

Docket Entry 43. The Commonwealth filed an answer to the Defendant's PCRA Petition on April 19, 2012. Docket Entry 44.

On August 14, 2012, Honorable Judge Moschetta Bell granted the Defendant a hearing on his PCRA Petition regarding defendant's allegations of ineffective assistance of trial counsel, as to the issue of failure to allow defendant to testify, as the record did not reflect a colloquy by trial counsel or the court regarding defendant's right to testify and/or his decision not to testify. The Commonwealth, in its Answer, noted that trial counsel stated in chambers that defendant would not testify. Docket Entry 45. The PCRA hearing was originally scheduled for October 11, 2012, but was postponed until an agreeable time for the parties by order of court on September 20, 2012. Docket Entry 46. A PCRA hearing was ultimately conducted before the undersigned on March 17, 2014, but was not concluded and scheduled to be continued on Jly 28, 2014. Docket Entry 50. The PCRA hearing was eventually resumed on November 20, 2014, but was, once again, not concluded and continued until December 31, 2014. Docket Entry 51. Defense counsel filed a Post Hearing Brief in Support of Post Conviction Relief Act Petition on March 5, 2015. Docket Entry 58. The Commonwealth filed a Brief in Opposition to PCRA Relief on August 4, 2016. Docket Entry 63.

On March 17, 2017, Honorable Judge DiSalle rendered an opinion on the PCRA Petition and, by order of court, denied Defendant's request for relief. Docket Entry 66. On April 13, 2017, Defense counsel filed a notice of appeal indicating that Defendant was appealing to the Superior Court of Pennsylvania from the opinion and order of March 17, 2017. Docket Entry 67.

Defense counsel filed a Concise Statement of Matters Complained of On Appeal on May 31, 2017 which alleged the following:

5

1. Trial counsel was ineffective for interfering with Petitioner Deloe's constitutional right to testify particularly in a case where no colloquy was conducted of Defendant waiving his right to testify.

2. Trial counsel was ineffective for his failure to investigate, interview, and call to testify known character witnesses.

Docket Entry 69.

## Legal Analysis

As stated above, Defendant raised two issues in his concise statement claiming that his trial counsel was ineffective. Defendant claims that trial counsel was ineffective for interfering with Defendant's constitutional right to testify. Defendant also claims that trial counsel was ineffective for failing to call certain character witnesses. This court finds that there are no issues of material fact and that the Defendant is not entitled to relief under the PCRA.

The PCRA provides in pertinent part that:

(a)  General rule. – To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

\*      \*      \*

(2) That the conviction or sentence resulted from one or more of the following:

(i)   a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's

6

right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

\* \* \*

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction

(3) That the allegation of error has not been previously litigated or waived.

42 Pa.C.S. § 9543.

Defendant has raised two separate claims for ineffective assistance of counsel on appeal. Pennsylvania employs a three-prong test (the "Pierce" test), derived from the guidelines espoused by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), to evaluate ineffective assistance of counsel claims. Commonwealth v. Pierce, 498 A.2d 423 (Pa. Super. 1985), aff'd, 527 A.2d 973 (Pa. 1987). Specifically, to be entitled to post-conviction relief, a defendant must demonstrate that:

(1) the claim underlying the ineffectiveness claim has arguable merit;
(2) counsel's actions lacked any reasonable basis; and
(3) counsel's actions resulted in prejudice to [the defendant].

Commonwealth v. Cox, 983 A.2d 666, 678 (Pa. 2009) (citations omitted).

Prongs (1) and (2) of this test are concerned with the "performance component" of counsel's assistance. Pierce, 498 A.2d at 425. Combined, they address "per se" ineffectiveness, whether counsel was in actuality ineffective. Pierce, 527 A.2d at 974. Counsel is presumed effective, and it is the defendant's burden to prove otherwise. Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779-780 (Pa. Super. 2015). If some reasonable basis existed for the course chosen by counsel, "counsel's assistance is deemed effective," unless some other course

7

"offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006) (citations omitted).

Prong (3) of the test is concerned with whether the ineffectiveness can be "linked specifically" to prejudice suffered by the defendant. Pierce, 527 A.2d at 974. A defendant "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." Commonwealth v. Chmiel, 30 A.3d 1111, 1127-28 (Pa. 2011) (citations omitted). "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." Commonwealth v. Paddy, 15 A.3d 431, 443 (Pa. 2011). Further, because a defendant must establish all three prongs of the Pierce test, a court is "not required to analyze the elements of an ineffectiveness claim in any specific order [and] if a claim fails under any required element, [the claim can be dismissed] on that basis." Commonwealth. v. Treiber, 121 A.3d 435, 445 (Pa. 2015) (citations omitted).

Defendant's first claim of ineffective assistance of counsel is that Attorney Zwikl "fail[ed] to allow" Defendant to testify at trial.[6] The Commonwealth contends that this claim does not meet the first prong of the Pierce test, that "the claim underlying the ineffectiveness claim has arguable merit." Cox, 983 A.2d at 678. The court agrees. "Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that 'counsel *interfered* with his right to testify, or that counsel gave specific advice *so unreasonable* as to vitiate a knowing and intelligent decision to testify on his own behalf.'" Commonwealth v. Miller, 987 A.2d 638, 660 (Pa. 2009) (quoting Commonwealth v. Nieves, 746 A.2d 1102, 1104 (Pa. 2000) (emphasis

---

[6] PCRA 3. (Numbers following "PCRA" are page numbers from Defendant's PCRA Petition filed March 5th, 2012).

8

added). A claim such as the one stated here, that counsel simply *failed to allow* Defendant to testify does not arise to "interference" as contemplated under the first prong of the Pierce test. *See* Commonwealth v. Uderra, 706 A.2d 334, 340 (Pa. 1998) (noting that a claim of ineffective assistance of counsel did not satisfy the requirement of interference where counsel only "advised [the defendant] not to testify [but] did not in any way prevent [the defendant] from taking the stand").

The most Defendant alleges to support this claim is that Attorney Zwikl did not inform him of his right to testify and did not prepare him to testify.[7] Attorney Zwikl, during the second PCRA hearing, testified that he spoke with Defendant regarding Defendant's right to testify on three separate occasions.[8] The trial court found Attorney Zwikl's testimony to be credible and accurate. Commonwealth v. Garrity, 500 A.2d 1106, 1111 (Pa. 1985) (appellate court ceding to the trial court's finding that trial counsel's testimony was accurate and the defendant's conflicting testimony was not). *See also* Commonwealth v. Neal, 618 A.2d 438, 441 (Pa. Super. 1992) (ruling in favor of the defendant where "trial counsel stated that . . . he did not specifically remember discussing with [the defendant] the right to testify . . . [and] conceded that it was possible that he never consulted with [the defendant] on the matter") (citations omitted).

In this case, Attorney Zwikl specifically recalled three instances where he discussed Defendant's right to testify, and although Attorney Zwikl had advised Defendant it was not "necessary" for him to testify,[9] he also communicated that it was Defendant's decision.[10] The

---

[7] *Id.*

[8] 2PT 5. (Numbers following "1PT" are page numbers from the transcript of the first PCRA Hearing conducted March 17th, 2014, and numbers following "2PT" are page numbers from the transcript of the second PCRA Hearing conducted on December 31st, 2014). See also PHB 3 n.3 (Numbers following PHB are page numbers from Defendant's Post Hearing Brief in Support of Post Conviction Relief Act Petition filed March 3rd, 2015).

[9] *Id.* 9.

[10] *Id.* 6-7.

9

fact that Attorney Zwikl had not prepared Defendant to testify was a result of Defendant having

never voiced "a coherent statement on what his intentions were . . . ."[11] to counsel. However,

trial counsel maintained that "it wouldn't have been particularly difficult to [prepare Defendant],

because [he would be] asking, essentially, the same questions to [Amanda Kearn[12]]."[13] Attorney

Zwikl indicated that his third and final discussion with Defendant regarding his testimony

occurred off the record, after the defense rested.[14] The trial transcript corroborates Attorney

Zwikl's recollection:

> THE COURT: Nothing from the Commonwealth. Anything for the Defendant?
>
> MR. ZWIKL: One minute, Your Honor.
>
> (Discussion was held off the record between defense counsel and defendant.)
>
> MR. ZWIKL: Nothing further, Your Honor.
>
> THE COURT: All right. So the Commonwealth rests and the defense does as well?
>
> MR. ZWIKL: Yes, Your Honor.[15]

Attorney Zwikl recalled that during this off-record discussion, he again reviewed with Defendant

the "pros and cons," of testifying,[16] and informed Defendant that it was not too late to testify,[17]

but that as a result of this discussion, Defendant "made the decision not to testify."[18]

---

[11] *Id.* 11-12.

[12] Amanda Kearn was Defendant's girlfriend at the time of the incident. Kearn and Defendant were separated by the time of trial, but Kearn testified that she was present in the home at the time of the incident and saw nothing happen.

[13] *Id.* 8.

[14] *Id.* 12.

[15] TT 699.

[16] 2PT 13.

[17] *Id.* 12

[18] *Id.* 13.

10

The PCRA petition also asserts that Defendant, "insisted, orally and in writing, from very early on that . . . he needed to testify . . . ."[19] Defendant's contention that he insisted on testifying requires a finding that Defendant understood his right and renders Attorney Zwikl's alleged failure to inform Defendant of that right impotent. Moreover, Defendant *did* state during his PCRA hearing that he *was* aware of his right to testify.[20] "Since [Defendant] was aware of his right as well as trial counsel's strategy, he could have exercised his own informed judgement and asserted his right to testify, by asking trial counsel to depart from the original strategy." Garrity, 500 A.2d at 1111. In fact, the trial transcript reveals the perfect opportunity for Defendant to have enunciated his dissension with Attorney Zwikl's strategy:

THE COURT: So you are not calling the Defendant?

MR. ZWIKL: If she [defense witness Amanda Kearn] goes down in flames and I see the jury making nooses, then I may call my client, I'm not intending to.

THE COURT: I'm not going to hold you to it. But as of now, you are not planning to?

MR. ZWIKL: That's correct.[21]

Defendant's understanding, coupled with his "full consultation[s]" with Attorney Zwikl, Commonwealth v. Breisch, 719 A.2d 352, 355–56 (Pa. Super. 1998) (holding that the underlying claim *had* merit in the *absence* of a "full consultation"), and his opportunity to make his desire to testify known to the trial court leaves no basis to infer that Defendant's right was interfered with or that his capacity to make a "knowing and intelligent decision" was "vitiated." Miller, 987 A.2d at 660. *See also* Commonwealth v. Wallace, 500 A.2d 816, 819–20 (Pa. Super. 1985) (where the appellee argued to no avail that he did not understand his right due to this youth and

---

[19] PCRA 3. *See also* 1PT 12, 18.
[20] 1PT 18.
[21] TT 593.

inexperience). Defendant, by his own admission, understood his right to testify and therefore "must bear the burden of his decision not to testify and cannot shift the blame to his attorney." Commonwealth v. Mancini, 490 A.2d 1377, 1387 (Pa. Super. 1985) (citations omitted).

Thus, Defendant's underlying claim of ineffectiveness does not meet the required criteria and it is unnecessary for the court to evaluate the overarching claim of ineffectiveness with regards to Prongs (2) and (3) of the Pierce test. "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the Pierce test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." Commonwealth v Steele, 961 A.2d 786, 797 (Pa. 2008) (citations omitted). Nonetheless, based on the following reasoning, the trial court finds that counsel's actions, in not having Defendant testify *had* a reasonable basis (prong 2) and did *not* result in prejudice to Defendant (prong 3). Cox, 983 A.2d at 678.

At the PCRA hearing, Attorney Zwikl conveyed that he felt that Defendant did not need to testify based on "the volume of other exculpatory evidence . . . ." in the case.[22] Included in this evidence was the testimony of Amanda Kearn, Defendant's ex-girlfriend who testified that she was present at the time of the incident and "categorically denied . . . the allegations that were made against [Defendant]."[23] One of Attorney Zwikl's central trial strategies was to rely on Kearn's testimony in preference of placing Defendant on the stand and "open[ing] the door to other questions that could be, potentially, problematic . . . ."[24] The Court deems this trial strategy to have a reasonable basis and Defendant has failed to show that some other course offered a "substantially greater" potential for success. Williams, 899 A.2d at 1064. In Breisch, the petitioner's only defense to the charges including forgery and theft "was based on her belief that

---

[22] 2PT 9.
[23] *Id.* 9-10.
[24] *Id.* 11.

12

[she was authorized] to charge expenses to the business." 719 A.2d at 356. The Superior Court determined that "the testimony that [the defendant] would have given was the sole opportunity to rebut the prosecution's incriminating testimony." *Id.* This is not so in the matter before the trial court. An adult witness supplied testimony denying that the conduct from which the charges arose ever occurred. This witness, according to Attorney Zwikl's judgment, precluded the necessity of Defendant taking the stand. "When determining whether counsel's actions or omissions were reasonable, we do not question whether there were other more logical courses of actions which counsel could have pursued: rather, we must examine whether counsel's decisions had *any* reasonable basis." Steele, 961 A.2d at 797 (citations omitted). In this case, the Court is satisfied that Attorney Zwikl had a reasonable basis for his decision not to call the Defendant as a witness.

By the same logic, it is the trial court's finding that Attorney Zwikl's strategy did not prejudice Defendant. The jury heard Defendant's "version of the events" through Kearn's testimony.[25] The fact that the jury did not credit the lucid testimony of a dissociated witness over the testimony of a 6-year old victim, makes it unlikely that they would have credited the accused's testimony. Commonwealth v. Hunzer, 868 A.2d 498, 512 (Pa. Super. 2005) (noting that "jurors are likely to suspect that . . . testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event.") (citations omitted). It certainly does not establish with "a reasonable probability that the outcome of the proceedings would have been different" had Defendant testified. Chmiel, 30 A.3d at 1127-28.

---

[25] 1PT 20.

13

Defendant's second claim of ineffective assistance of counsel is that Attorney Zwikl "fail[ed] to investigate, interview, and call" character witnesses to testify on his behalf at trial.[26] Defendant avers that he provided trial counsel with a list of eight character witnesses willing to testify on Defendant's behalf, and that these witnesses were "familiar with [Defendant's] reputation in the community for being honest, law abiding, and non-violent."[27] Defendant avers, and Attorney Zwikl recalled, that these character witnesses were never interviewed or subpoenaed. While "[e]vidence of good character . . . may, in and of itself, create a reasonable doubt of guilt," Commonwealth v. Harris, 785 A.2d 998, 1000 (Pa. Super. 2001) (citations omitted), "[f]ailure to call a witness is not *per se* ineffective. Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007). "When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the [Pierce test] by establishing that:

(1) the witness existed;
(2) the witness was available to testify for the defense;
(3) counsel knew of, or should have known of, the existence of the witness;
(4) the witness was willing to testify for the defense; and
(5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial."

Commonwealth v. Johnson, 966 A.2d 523, 536 (Pa. 2009). *See also* Commonwealth v. Lauro, 819 A.2d 100, 105 (Pa. Super. 2003). It remains Defendant's burden to show that trial counsel "had no reasonable basis for declining to call . . . a witness." Washington, 927 A.2d at 599. In the case *sub judice*, Defendant meets criteria (1) through (4) of the above modified Pierce test, as there is no challenge by the Commonwealth to the existence, availability, and willingness of the witnesses to testify. However, Defendant's claim lacks merit for the following reasons.

---

[26] PCRA 4.
[27] PHB 5.

14

Of the three character traits the witnesses would have presumably testified to, Defendant's reputation for honesty is irrelevant. "Character evidence of [a] defendant's truthfulness is admissible only if: (1) the character trait of truthfulness is implicated by the elements of the charged offenses; or (2) the defendant's character for truthfulness was attacked by evidence of bad reputation." Commonwealth v. Minich, 4 A.3d 1063, 1070 (Pa. Super. 2010) (citations omitted). In the instant case, none of Defendant's charges implicate Defendant's honesty. See Commonwealth v. Lauro, 819 A.2d 100, 109 (Pa. Super. 2003) ("In a rape case, evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as non-violence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order.") (citations omitted). See also Commonwealth v. Puksar, 951 A.2d 267, 281 n.7 (Pa. 2008) (noting evidence of a defendant's honesty is "irrelevant" in a murder prosecution). Further, "merely introduc[ing] evidence denying or contradicting the [defendant's version of the facts, without assailing defendant's community reputation for truthfulness generally, renders] evidence of the defendant's alleged reputation for truthfulness [in]admissible." Commonwealth v. Kennedy, 151 A.3d 1117, 1128 (Pa. Super. 2016) (citations omitted). Here, Defendant did not testify and his reputation for truthfulness was not impugned, nor does Defendant so contend. As a result, testimony vouching for Defendant's reputation of honesty would have been irrelevant to the charges he was facing and therefore inadmissible at trial.

As examples of what actual character testimony might have been proffered, PCRA counsel provided eight affidavits. Seven of these affidavits included either letters from potential character witnesses or excerpts of witnesses' testimony proffered at Defendant's sentencing. The

15

trial court finds that the substance of these writings does not evince testimony that would have been admissible at trial.

> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. . . . Such evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

Commonwealth v. Johnson, 27 A.3d 244, 248 (Pa. Super. 2011) (emphasis removed). In the instant case, although the provided affidavits purport that witnesses would have testified to Defendant's community reputation for being law-abiding and non-violent, the samples supplied do not actually "meet the evidentiary criteria." *Id.* at 250. Instead, the great majority of potential witnesses' writings and testimony address their own opinion and perception of Defendant and specific instances of Defendant's conduct. Witnesses' "own experience with [Defendant] and their perceived relationship between [Defendant] and the victim is not testimony regarding [Defendant's] general reputation in the community." Commonwealth v. Van Horn, 797 A.2d 983, 988 (Pa. Super. 2002) (citations omitted). *See also* Johnson, 27 A.3d at 249-50 (holding that testimony relating [a defendant's] "specific acts in behaving appropriately around children in their family . . . is not proper character evidence to his general reputation for chastity in the community.") (citations omitted). Because the substance of the witness' statements contained in the proffered writings in the instant case were not "limited" to Defendant's general community reputation for being law-abiding and non-violent, the substance of the testimony would have been inadmissible at trial toward either trait. *See* Lauro, 819 A.2d at 109. Accordingly, the trial court finds that Defendant's second PCRA claim also lacks arguable merit. *Id.* at 109-10.

Assuming *arguendo*, that Defendant had presented appropriate and admissible character evidence, he fails to establish that there was no reasonable basis for his counsel's decision not to

16

call character witnesses, and that he was denied a fair trial and thereby "prejudiced" as a result. Cox, 983 A.2d at 693.

Attorney Zwikl explained his rationale for declining to offer character witnesses at trial, noting the formidable amount of evidence favorable to the Defendant that had been placed before the jury. In addition to the testimony of Amanda Kearn, Attorney Zwikl cited the DNA Analysis performed by the Pennsylvania State Police Bureau of Forensic Services to which Defendant voluntarily submitted. The test compared the DNA profile of a dried blood sample taken from Defendant to the DNA profile of seminal stains recovered from the front of A.D.'s underwear. The test revealed that "[t]he DNA profile obtained from [Defendant] did not match the DNA profile obtained from the sperm and non-sperm fractions of the [underwear]." Lab Report 2 (emphasis added). Attorney Zwikl also cited the testimony of the emergency room physician, Dr. Amy Smookler, and the Sexual Assault Nurse Examiner (SANE), Kathryn Dames. Dr. Smookler, who examined the victim on November 25th, 2007, testified that A.D. had a lack of physical trauma as well as an intact hymen.[28] Nurse Dames testified that based on her examination of the child, "[she] was not able to rule in or rule out sexual assault . . . ."[29] In his closing Attorney Zwikl emphasized the significance of this evidence for the jury:

> My client is about six foot and change and 200 and some pounds, and █████████ is about this big (indicating). I can't under those circumstances, be completely dismissive of the lack of physical evidence or non-existence of any trauma evidence anywhere or of DNA.
>
>
>
> Now, after that, it comes down to testimony that you heard this morning from Amanda Kearn. She was there. I don't know that I'll get many sexual assaults where there is a third person in the room to talk about what they saw or what they didn't see. I would imagine that most of them are between the victim and the accused. But she testified that from November 23rd, which was a Friday, to

---

[28] TT 343, 347.
[29] *Id.* 407.

17

November 25th, she was there with the children, that she was present and no one got out of her sight for more than a bathroom break in a small apartment, and that nothing happened.

There is a lot of evidence there. You can weigh it and choose it as you see fit, weight to what you find important and what you don't find important. But at the end of the day, I wonder if you can find a reasonable doubt.[30]

Attorney Zwikl reiterated at the second PCRA Hearing that this evidence, "should have been more than enough," and that character evidence might have "detract[ed] from [this other] very serious exculpatory evidence."[31]

Historically, the necessity for character testimony has been recognized when a defendant is unable to "produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character," Commonwealth v. Luther, 463 A.2d 1073, 1077 (Pa. Super, 1983) (citations omitted). While it may be advisable to call character witnesses in other contexts, this court is not prepared to declare that such testimony was *necessary* in this context or that trial counsel's actions lacked *any reasonable basis* by failing to do so. The court is satisfied that Attorney Zwikl did consider calling character witnesses,[32] and that the decision to forego character testimony was a "tactical one" with a "reasonable basis." *See* Commonwealth v. Mickens, 597 A.2d 1196, 1203 (Pa. Super, 1991). The strategy of relying on physical and other exculpatory evidence was deemed by counsel to be a course conducive to success at the time, and "[a] claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued." Washington, 927 A.2d at 599-600. Accordingly, this court holds that Defendant's second claim of ineffective assistance of counsel fails to meet the second prong of the Pierce test.

---

[30] *Id.* 710-12.
[31] 2PT 17.
[32] *Id.* 16.

18

By similar rationale, the court is disinclined to conclude that Defendant was prejudiced by the absence of character testimony. Attorney Zwikl believed that the amount of exculpatory evidence present did not need to be supplemented by character evidence in order to achieve a not-guilty verdict:

> What I told the jury [was], we voluntarily submitted to a DNA test, so we could come to you and tell you . . . there was no match . . . . You had no physical evidence, and beyond that, there was a physical examination of the young girl that revealed no signs of any sort of physical trauma to her whatsoever. So . . . those factors, standing alone, could have raised a reasonable doubt, before you even got to the fact that Ms. Kearn got up and testified that she was personally there, and that this didn't happen.[33]

In light of all this substantive evidence, that did not overcome the victim's testimony and prevent the jury from finding Defendant guilty, the court is unconvinced that the testimony of a handful of witnesses vouching for Defendant's law-abiding character would have swayed the jury. *See* Commonwealth v. Ferrari, 593 A.2d 846, 852 (Pa. Super. 1991) (holding that calling character witnesses would not have offered a reasonable probability of a "more favorable" outcome where other witnesses "confirmed [the defendant's] version of the [facts] . . . [and t]he jury nevertheless chose to believe the testimony of the Commonwealth's witnesses"). Additionally, Attorney Zwikl did call witnesses Joseph Lubas and Maryann Lubas (Defendant's stepfather and mother, respectively) who claimed that they had visited with Defendant, Kearn, ▨, and the victim on the weekend in question and went out to dinner with them on the evening of November 24th, 2007.[34] Specifically, Maryann Lubas testified at length regarding the demeanor of the household:

> I walked out into the living room. [The victim] was all bubbly and happy. There wasn't anything wrong at all. She wanted to show me a game that Amanda [Kearn] had put on the computer . . . Mike [Defendant] was asking me questions

---

[33] *Id.* 18.
[34] TT 531.

19

at the same time about the business and ▮▮▮▮ was just kind of following us around. . . , it was just a normal Sunday afternoon,[35]

Finally, the testimony of Amanda Kearn presented Defendant's character in a positive light describing how he would refer to the victim as "his princess,"[36] ▮▮▮▮▮▮▮▮▮▮ ▮▮▮[37] Neither this testimony nor any of the other exculpatory evidence discussed, had the impact on the jury that Defendant expects the court to believe that character witnesses would have had. Therefore, the court finds no basis to draw the inference that "there is a reasonable probability that but for the [omission of character evidence] the outcome of the proceedings would have been different." Harris, 785 A.2d at 1000. Such is needed to meet the third prong of the Pierce test and as stated, Defendant has failed to do so.

For the reasons set forth, the trial court submits that Defendant failed to prove that he is entitled to relief under the Post Conviction Relief Act. The court therefore submits that its denial of Defendant's PCRA petition should be affirmed.

BY THE COURT,

DATE: 12 /26 /2017

JOHN F. DISALLE, J.

---

[35] Id. 540.
[36] Id. 628.
[37] Id. 602.

20